## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.,* | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |
| | ) |
| DELAWARE TRUST COMPANY (f/k/a CSC TRUST COMPANY OF DELAWARE), as INDENTURE TRUSTEE, | ) |
| | ) |
| | ) BAP-14-024 |
| Appellant, | ) |
| | ) C.A. No. 14-723 (RGA) |
| v. | ) |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.,* | ) |
| | ) |
| Appellees. | ) |
| | ) |

## APPELLEE PIMCO'S MEMORANDUM OF LAW IN
## <u>SUPPORT OF MOTION TO DISMISS APPEAL</u>

**BINGHAM MCCUTCHEN LLP**
Jeffrey S. Sabin
399 Park Avenue
New York, New York 10022
Telephone: (212) 705-7000
Facsimile: (212) 506-1800

Julia Frost-Davies
Patrick Strawbridge
Christopher L. Carter
One Federal Street
Boston, MA 02110
Telephone: (617)-951-8000
Facsimile: (617)-951-8736

**CONNOLLY GALLAGHER LLP**
Karen C. Bifferato (#3279)
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 888-6221
Facsimile: (302) 757-7299
Email: kbifferato@connollygallagher.com

*Counsel for Pacific Investment Management Company LLC*

{05132392.DOCX.}

## TABLE OF CONTENTS

Page

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ............................................. 1

SUMMARY OF ARGUMENT ............................................................................................ 4

STATEMENT OF FACTS .................................................................................................. 5

ARGUMENT ..................................................................................................................... 7

I.    The Appeal is Moot Because it Necessarily Seeks to Upset Settled
Interests Under the Final DIP Financing Order ...................................................... 7

    A.    This Appeal is Statutorily Moot ................................................................. 7

    B.    This Appeal is Equitably Moot ................................................................... 9

II.    The Remedies Requested By the Appellant Lack Any Basis in Law ................. 14

    A.    Appellant's Requested Relief Sets the Floor of its Recovery at the
Same level as the Settlement Agreement It Declined, While
Allowing it to Continue to Litigate for A Higher Recovery ..................... 14

    B.    Appellant's Request for An Order Prohibiting Future Tender
Offers is Not Ripe for Adjudication and Seeks an Impermissible
Advisory Opinion ..................................................................................... 16

CONCLUSION ................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Lab. v. Gardner,*
    387 U.S. 136 (1967) ............................................................................................................16

*In re Baldwin,*
    700 F.3d 122 (3d Cir. 2012) ...........................................................................................15

*Celotex Corp. v. Edwards,*
    514 U.S. 300 (1995) ..............................................................................................................8

*Coffin v. Malvern Fed. Sav. Bank,*
    90 F.3d 851 (3d Cir. 1996) ...........................................................................................17

*In re Continental Airlines,*
    91 F.3d 553 (3d Cir. 1996) ...........................................................................10, 12, 13

*Eastwind Group, Inc. v. Nat'l Union Fire Ins. Co.,*
    47 Fed. App'x 83 (3d Cir. 2002) ................................................................................15

*In re Energy Future Holdings Corp.,*
    No. 14-10979 (Bankr. D. Del. June 6, 2014) ...............................................2, 5, 6

*In re Genesis Health Ventures, Inc.,*
    204 Fed. App'x 144 (3d Cir. 2006) .............................................................................9

*In re Jevic Holding Corp.,*
    Nos. 13-104-SLR and 13-105-SLR, 2014 WL 268613 (D. Del. Jan. 24, 2014) ....................11

*In re Kainos Partners Holding Co.,*
    No. 10-560-LPS, 2012 WL 6028927 (D. Del. Nov. 30, 2012) ...........................10, 11

*In re Kassover,*
    98 Fed. App'x 30 (2d Cir. 2004) ................................................................................11

*In re Matter of Envirodyne Indus., Inc.,*
    29 F.3d 301 (7th Cir. 1994) ...........................................................................................9

*In re New Century TRS Holdings, Inc.,*
    407 B.R. 576 (D. Del. 2009) ........................................................................................11

*Nordhoff Investments, Inc. v. Zenith Elecs. Corp.,*
    258 F.3d 180 (3d Cir. 2001) .....................................................................................9, 12

*In re Northwestern Corp.*,
   No. 08-513-JJF, 2009 WL 2399120 (D. Del. Aug. 4, 2009) ....................................................11

*In re PC Liquidation Corp.*,
   No. CV-06-1935 (SJF), 2008 WL 199457 (E.D.N.Y. Jan. 17, 2008) ......................................11

*In re Resource Technology Corp.*,
   430 F.3d 884 (7th Cir. 2005) ......................................................................................................9

*In re Rickel Home Centers, Inc.*,
   209 F.3d 291 (3d Cir. 2000)........................................................................................................16

*Samsung Elec. Co. Ltd. v. Ad Hoc Consortium of Floating Rate Noteholders*,
   Civil No. 09–0836 (RBK), 2010 WL 2636115 (D. Del. June 29, 2010)................................16

*In re SemCrude L.P.*,
   456 Fed. App'x 167 (3d Cir. 2012)..............................................................................................9

*In re Semcrude, L.P.*,
   728 F.3d 314 (3d Cir. 2013)..........................................................................................................9

*In re SGPA, Inc.*,
   34 Fed. App'x 49 (3d Cir. 2002)...............................................................................................9, 10

*Shields v. Zuccarini*,
   254 F.3d 476 (3d Cir. 2001)........................................................................................................14

*Spartan Mills v. Bank of Am.*,
   112 F.3d 1251 (4th Cir.1997) .......................................................................................................8

*In re Swedeland Dev. Grp., Inc.*,
   16 F.3d 552 (3d Cir. 1994)............................................................................................................7

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012) .........................................................................................................17

*In re Washington Mutual, Inc.*,
   442 B.R. 314 (D. Del. 2011) .......................................................................................................15

*Will v. United States*,
   389 U.S. 90 (1967) .......................................................................................................................15

*In re Zenith Elec. Corp.*,
   329 F.3d 338 (3d Cir. 2003).........................................................................................................10

**Statutes**

U.S.C.A. Art. 2, cl. 1 .................................................................................................................16

11 U.S.C. § 363(m) ....................................................................................................................11

11 U.S.C. § 364(e) ................................................................................................................ *passim*

**Other Authorities**

13 Charles Alan Wright, Arthur R. Miller & Edward H.Cooper, *Federal Practice and Procedure*, § 3529.1 (3d ed.1998) ...............................................................................16

15 James Wm. Moore *et al.*, *Moore's Federal Practice* § 101.75 (Matthew Bender 3d ed.1999)...................................................................................................................16

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Pacific Investment Management Company LLC, as investment manager for certain former holders of claims under EFIH First Lien Notes that were settled by the order under appeal, and current holders of the largest interest in the related post-petition financing ("PIMCO"), is concurrently herewith moving the Court to dismiss the above-captioned bankruptcy appeal of the *Order Approving EFIH First Lien Settlement* [Bankr. Dkt. No. 858] (the "Order")[1] as moot and/or for lack of Article III jurisdiction.

Pursuant to the Order, PIMCO and certain other First Lien Noteholders settled their EFIH First Lien Note claims (the "Settlement"). The effectiveness of that Settlement was an express condition of PIMCO's agreement to provide more than $2 billion of post-petition financing to the Debtors (the "DIP Financing"), because the two transactions were integrated and interdependent. *See Final Order Approving Postpetition Financing for Energy Future Intermediate Holding Company LL and EFIH Finance Inc.* [Bankr. Dkt. No. 859] (the "DIP Order"), at 7 n.6 ("the closing and funding of the EFIH First Lien DIP Financing is expressly conditioned upon the entry of the First Lien Settlement Order and the First Lien Settlement Order not having been stayed"). That financing was approved by order dated June 6, 2014, has not been appealed, and was fully funded on June 19, 2014. Accordingly, PIMCO entered into the EFIH First Lien Settlement, converted its EFIH First Lien Notes (valued at approximately $837 million) into DIP loans, and provided up to $1.45 billion in additional DIP funding to the Debtors based, in part, on the effectiveness of the Order. PIMCO accounts for over 40% of the DIP Financing.

---

[1] Capitalized terms used herein shall have the meanings ascribed to them in the Order.

This appeal and the relief sought pursuant thereto challenges the EFIH First Lien Settlement, and thus constitutes an impermissible collateral attack on the DIP Order. Appellant claims that "this appeal does not involve in any way an attempt to overturn the obligations, priority or liens of DIP financing, or even to reverse the transaction of those who accepted the First Lien Settlement." Appellant Br. at 17-18. Appellant *must* argue this, because, as it recognizes, the "DIP Financing and the First Lien Settlement are authorized by separate orders of the bankruptcy court," *id.* at 18—and the Appellant withdrew its objection to the order approving the DIP Financing and failed to seek a stay or appeal it to this Court.[2] *See* DIP Order. This was no surprise: by permitting the DIP Order to proceed unchallenged, the Appellant obtained a full cash repayment of all principal and interest on the EFIH First Lien notes just weeks into the chapter 11 cases, avoiding the potential for cramdown and uncertainty regarding the treatment of its claims in a plan of reorganization—all while retaining its full rights to litigate in the Bankruptcy Court for an additional makewhole payment.

Having reaped the benefits of the DIP Order, Appellant cannot continue to appeal the Order on a standalone basis. Because the Appellant's requested relief necessarily affects the finality of the DIP Order, it is moot under 11 U.S.C. § 364(e) (which expressly protects DIP orders from collateral attack). The appeal also separately runs afoul of the established doctrine of equitable mootness, which independently protects the settled expectations and finality of complex bankruptcy transactions like the DIP.

---

[2] Closing of the DIP Financing was conditioned upon the entry of an unstayed order approving the Settlement. DIP Order at 7 n.6. Appellant unsuccessfully sought a stay in both the Bankruptcy Court, Hearing Transcript at 264, *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. June 6, 2014) (A-40), and this Court. [Dkt. No. 11].

The novel remedies advanced by the Appellant confirm that this Court lacks the power to craft any non-advisory remedy without implicating the finality and provisions of the DIP Order, which has not been appealed.  Specifically:

- The Appellant's request that "any proposed plan of reorganization for EFIH include a 26.9-cents-on-the dollar settlement offer to the holders of 10% Notes, on the disputed makewhole amount plus interest (and then including other amounts due), valid through the voting deadline" frustrates the finality of the DIP Order and the express conditions to funding and closing of the DIP.  It also seeks to bind the Debtor, and potentially future reorganization plan sponsors (if exclusivity expires), to a specific provision that must be the part of any plan going forward.  Appellant cites no authority whatsoever, in either the Bankruptcy Code or case law, permitting such extraordinary prospective relief.  Nor does it attempt to argue that it can satisfy the ordinary legal test for injunctive relief or a writ of mandamus.  Moreover, the DIP Order and related financing documents contain dozens of pages of conditions, restrictions and rights that benefit the DIP Lenders.  Depending on how the Appellant's requested restrictions may be implemented (which it makes no effort to explain) this relief likely would frustrate or violate any number of those provisions, further confirming the inability of Appellant's to ignore the connection between the orders and proceed by appealing only the Order.

- Similarly, the Appellant's request for an order that increased offers be held open for a specified period of time (either immediately or at the time of plan closing) again undermines the DIP Order's provisions, lacks any basis in bankruptcy law, and again seeks affirmative injunctive relief against the Debtors and other potential plan proponents

(or a writ of mandamus to the Bankruptcy Court) without any attempt to satisfy the legal standards governing such requests.

- Finally, Appellant seeks an order to "vacate in part, without unwinding the existing parties' acceptance of, the First Lien Settlement, and require the bankruptcy court to enter an injunction against the Debtors proposing any additional tender offers in the chapter 11 case." This request seeks an order that would have no effect on the appealed transaction, and would instead only purport to restrict *future* transactions that the Debtors *might* propose. It thus constitutes a request for an advisory opinion that Article III courts lack jurisdiction to issue.

In essence, Appellant here is seeking to take the terms of a settlement that it in large part rejected and convert it to a standing option available to the non-settling noteholders while it continues to litigate the makewhole claims in full below.[3] This transparent attempt to lock in downside protection, hold up future proceedings and create additional leverage against the Debtors in ongoing litigation frustrates the orderly bankruptcy process and PIMCO's interest in the finality of the DIP Order, and runs afoul of basic doctrines governing mootness and Article III jurisdiction. For these reasons, PIMCO respectfully requests that the District Court dismiss this appeal.

## SUMMARY OF ARGUMENT

1. The Appeal should be dismissed because the challenged Order is inextricably intertwined with the DIP Order, and the DIP Lenders extended credit to the Debtors in good faith and in reliance on the entry of an unstayed Order. As a result, this Appeal is moot under 11

---

[3] It should be noted that nothing in the DIP Order or the Settlement Order otherwise impairs the ability of Appellant to continue to litigate its makewhole claim in the Bankruptcy Court and, if successful, obtain its makewhole amount, interest and attorney's fees (which aggregate amount the DIP Order recognizes is adequately protected).

U.S.C. § 364(e), which protects financing of the type at issue here from collateral attacks like those of the Appellant.

      2.     Alternatively, the Appeal should be dismissed as equitably moot.   Contrary to Appellant's argument, the doctrine is not limited only to plan confirmation orders, but applies equally to settlements.   The equitable mootness doctrine overwhelmingly favors dismissal here because PIMCO and the other DIP Lenders relied upon the Bankruptcy Court's unstayed approval of the Settlement and proceeded to substantially consummate the Settlement by releasing the bargained-for post-petition financing—in a total amount exceeding $2.3 billion.

      3.     This Court lacks authority or jurisdiction to grant the relief requested by the Appellant.   The Appellant's extraordinary request that certain terms be included for its benefit in any future bankruptcy plan is unsupported by any authority in statue or case law, and it makes no attempt to satisfy the burdens that typically apply to requests for injunctive relief or writs of mandamus.   The Appellant's request is for a purely advisory opinion passing on the legality of possible future transactions that have not yet been proposed, and in which the Appellant may not have any interest.

## STATEMENT OF FACTS

      PIMCO has a direct legal and pecuniary interest in the outcome of this appeal.   The Order approved the Debtor's settlement with PIMCO, and the effectiveness of the settlement through entry of an unstayed order in the Bankruptcy Court was a condition of PIMCO's agreement to provide the DIP Financing to the Debtors.   After the Bankruptcy Court approved the Settlement, [Bankr. Dkt. No. 858], the Appellant unsuccessfully sought a stay of that Order in both the Bankruptcy Court, Hearing Transcript at 264, *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D.Del. June 6, 2014) (A-40), and this Court.   [Dkt. No. 11].   In its order denying

the stay, this Court held that the Appellant failed to meet their burden of demonstrating a likelihood of success on the merits of its claim that "the Bankruptcy Court's finding that the settlement is non-discriminatory and 'a reasonable exercise of the Debtors' business judgment.'" *Id.* This Court also held that the Appellant had not demonstrated any irreparable harm merely because of the prospect that an ordinary appeal may be moot. Finally, this Court held that granting a stay would threaten the Debtors with "substantial injury by putting the [DIP] financing for the settlement at risk of unraveling." *Id.* As a result, the DIP Financing was approved by the DIP Order on June 6, 2014, has not been appealed, and was fully funded on June 19, 2014.

Pursuant to the DIP Order, the EFIH First Lien DIP Lenders, including PIMCO, were granted "valid, binding, continuing, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the EFIH DIP Collateral, except that the EFIH First Lien DIP Liens shall be junior to Permitted Liens and the Carve Out." DIP Order ¶ 9. The DIP Order specifically conditioned PIMCO's obligation to close and provide the DIP Financing on the entry of a final, non-stayed order approving the Settlement. *Id.* at 7 n.6.

Additionally, the DIP Order provides a number of restrictions with respect to the collateral securing the DIP. *See, e.g., id.* ¶ 22 (providing that "[t]he EFIH Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the EFIH DIP Collateral other than as permitted in the EFIH First Lien DIP Documents . . . ."). To the extent that additional DIP funding is required and secured by EFIH DIP Collateral, it cannot be used to fund any additional settlement amount without first repaying the EFIH First Lien DIP Obligations. DIP Order ¶ 20. The DIP Order also imposes a number of direct limitations on the use of the DIP

proceeds, set forth in the DIP Order itself, as well as the related DIP Credit Agreement and DIP Papers.  DIP Order at 17.

## ARGUMENT

Appellant argues that the appropriate appellate remedies are to (A) require any plan of reorganization to include the first lien settlement offer, (B) require the EFIH Debtors to make the higher level settlement offer to all first lien noteholders, and (C) ban future tender offers. Contrary to Appellant's arguments, these remedies are both statutorily and equitably moot, lack any basis in law or the Bankruptcy Code, and/or request an improper advisory opinion.

I.    **The Appeal is Moot Because it Necessarily Seeks to Upset Settled Interests Under the Final DIP Financing Order**

This appeal should be dismissed as moot because this Court denied Appellant's requests for a stay, the Settlement has been substantially consummated, and the requested relief would cause adverse consequences to numerous parties.

A.   **This Appeal is Statutorily Moot**

The Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under this section to obtain credit or incur debt. . . does not affect the validity of any debt so incurred. . . to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal."  11 U.S. Code § 364(e).  Where § 364(e) precludes "effective relief," as it does here, the Third Circuit has held that the appeal of a financing order is moot. *See, e.g., In re Swedeland Dev. Grp., Inc.,* 16 F.3d 552, 560-61 (3d Cir. 1994) (en banc) (holding appeal moot with respect to funds already distributed under financing order).  This is just such a situation.

Here, it is undisputed that PIMCO and the other lenders acted in good faith and are entitled to the protection of § 364(e); the unchallenged DIP Order expressly so provides. *See* DIP Order ¶ 26 (noting that "each of the EFIH First Lien DIP Lenders are extending credit to the EFIH Debtors . . . in good faith" and that the "First Lien DIP Lenders (including the Exchanging Lenders) are entitled to the protections provided in section 364(e) of the Bankruptcy Code.)"   As described above, closing of the DIP Funding was conditioned on the entry of an unstayed Settlement Order.[4]  DIP Order at 7 n.6.  It also contains, as an additional express condition, a number of limitations and requirements on the Debtors' use of the DIP proceeds, set forth in the DIP Order itself, the DIP Credit Agreement and DIP Documents.  *See* DIP Order at 17.  As a result, it is impossible for this Court to grant effective relief on this appeal without nullifying or otherwise implicating multiple provisions of the DIP Order.

The Appellant argues that § 364(e) does not apply because it is not challenging the validity of the DIP Order, merely "the manner in which the Debtors used its DIP financing." Appellant Br. at 18.[5]  But the "manner" in which the Debtors used the DIP funds goes to the heart of the Order, and nowhere does Appellant explain how its proposed remedies can be implemented consistent with the conditions and requirements of the DIP Order and the related

---

[4] See note 2, *supra*.

[5] The "manner" in which the Debtors used the DIP Financing included, in large part, the repayment in full in cash of the principal and interest of the notes held by Appellant—a use as to which Appellant clearly does not complain.  In any event, portraying its appeal as questioning the "manner" in which the debt was used is nothing more than a thinly-veiled collateral attack on the DIP Order and its provisions.  "[F]ederal courts have barred bankruptcy parties from collateral assertions of legal claims after they fail, without reason, to object and appeal as required." *Spartan Mills v. Bank of Am.*, 112 F.3d 1251, 1256–57 (4th Cir.1997) (holding that due process applied to preclude collateral attack on DIP financing agreement that granted lender a first priority lien on all of debtor's assets); *Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) (collateral attacks on bankruptcy court orders are not permitted; the proper remedy is to appeal).

Credit Agreement and DIP Documents. Appellant's proposed relief thus necessarily calls into question the "validity of [the] debt. . . incurred," and violates § 364(e).

### B. This Appeal is Equitably Moot

The established doctrine of equitable mootness independently requires the dismissal of this appeal. Equitable mootness does not ask whether a court can hear a case, but whether it should refrain from doing so because of the perceived disruption and harm that granting relief would cause. *In re Semcrude, L.P.*, 728 F.3d 314, 317 (3d Cir. 2013).[6] The doctrine permits courts to dismiss an appeal to "prevent[] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before [the transactions] became extremely difficult to retract." *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001). As Appellant's own cases observe, equitable mootness can require dismissal of a case even when a court has Article III jurisdiction. *See In re Matter of Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994) (explaining that even where the availability of partial relief is available, thus meeting Article III's requirements, "courts will frequently refuse to modify the plan if it has already been implemented"); *see also In re Resource Technology Corp.*, 430 F.3d 884, 888 (7th Cir. 2005) ("Perhaps Chastang has in mind not [Article III] mootness but judicial reluctance to upset legitimate reliance interests.").

---

[6] Appellant mischaracterizes *SemCrude* as standing for the principle that equitable mootness is "strongly disfavored." Appellant's Br. at 2. *SemCrude* says only that the "judge-made origin [of the equitable mootness doctrine], coupled with the responsibility of federal courts to exercise their jurisdictional mandate, obliges us, however, to proceed most carefully before dismissing an appeal as equitably moot"—not that the court strongly disfavors it. In any event, the Third Circuit has repeatedly applied the doctrine when warranted, as it is here. *See, e.g., In re SemCrude L.P.*, 456 Fed. App'x 167 (3d Cir. 2012) (affirming dismissal of appeal as equitably moot); *In re Genesis Health Ventures, Inc.*, 204 Fed. App'x 144 (3d Cir. 2006) (same); *In re SGPA, Inc.*, 34 Fed. App'x 49 (3d Cir. 2002) (same); *Nordhoff Investments, Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180 (3d Cir. 2001) (same).

In the Third Circuit, courts consider five factors in determining whether it would be equitable to reach the merits of a bankruptcy appeal: (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments. *In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) ("*Continental I*") (en banc) (citations omitted). All five factors need not weigh in favor of application of the doctrine, *In re SGPA, Inc.*, 34 Fed. App'x 49, 53 (3d Cir. 2002), and though the determination of whether an appeal is equitably moot requires a "discretionary balancing of equitable and prudential facts," *Continental I*, 91 F.3d at 560, "substantial consummation" is the "foremost consideration." *In re Zenith Elec. Corp.*, 329 F.3d 338, 343 (3d Cir. 2003).

Contrary to Appellant's argument, the doctrine of equitable mootness is not limited to cases where a plan of reorganization has been confirmed. *See* Appellant Br. at 18. Although the factors listed above speak to a "reorganization plan," courts, including courts in this District, have applied the doctrine to orders approving settlements just as they would apply the factors to a confirmation order.

For example, in *In re Kainos Partners Holding Co.*, No. 10-560-LPS, 2012 WL 6028927, at *1 (D. Del. Nov. 30, 2012), the court dismissed the United States Trustee's appeal of a Bankruptcy Court order approving an asset purchase agreement made as part of a global settlement. Though the United States Trustee argued that it sought only to vacate a single $250,000 carve-out provision of the settlement agreement, and claimed not to seek reversal of the sale of estate assets or the settlement agreement in its entirety, the court found that, *inter alia*, the requested relief "would affect the success of the Global Settlement" and that "even though

effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *Id*. at *3. Finding that the settlement had been substantially consummated and its implementation not stayed, the court dismissed the appeal as equitably moot. *Id*.[7] *See also In re Jevic Holding Corp.*, Nos. 13-104-SLR and 13-105-SLR (consolidated), 2014 WL 268613, at *4 (D. Del. Jan. 24, 2014) (holding in the alternative that settlement at issue had been substantially consummated "as all the funds have been distributed"); *In re Northwestern Corp.*, No. 08-513-JJF, 2009 WL 2399120, at *2 (D. Del. Aug. 4, 2009) (appeal from order approving post-confirmation settlement was equitably moot where objector failed to seek stay and "[t]he settlement was a complex and integrated resolution of the many claims involving the parties, and the Court is not persuaded that relief can be granted... without causing adverse consequences to numerous parties"); *In re PC Liquidation Corp.*, No. CV-06-1935 (SJF), 2008 WL 199457, at *5 (E.D.N.Y. Jan. 17, 2008) (appeal from order approving pre-confirmation settlement was equitably moot; "the doctrine of equitable mootness is not limited to appeals of orders confirming reorganization plans or where the rights of parties bound by a confirmed reorganization plan would be adversely affected").[8]

Applying the five *Continental I* factors to this Settlement, this appeal should be dismissed as equitably moot.

---

[7] Although it apparently was not addressed in *Kainos*, the validity and finality of sales of assets in bankruptcy benefit from a similar statutory protection as that which governs the DIP Order here. *Compare* 11 U.S.C. § 363(m) *with* 11 U.S.C. § 364(e).

[8] Courts have also applied the equitable mootness doctrine in the context of liquidations. *See In re New Century TRS Holdings, Inc.*, 407 B.R. 576, 587-88 & n. 27 (D. Del. 2009) ("the Court is not aware of any reason why it should be concerned with inequitable appellate relief in a reorganization context but not in a liquidation context"). *In re Kassover*, 98 Fed. App'x 30 (2d Cir. 2004) (appeal of an order of the Bankruptcy Court ordering the sale of a closely held real estate corporation). Appellant is thus incorrect to imply that equitable mootness applies only to plan confirmation orders. Appellant Br. at 18.

The substantial consummation of a reorganization plan, settlement or other complex bankruptcy transaction is the "foremost consideration" in an equitable mootness analysis. *See, e.g., Continental I*, 91 F.3d at 560; *Nordhoff*, 258 F.3d at 185. Here, that "foremost consideration" weighs heavily in favor of dismissal. As explained above, the effectiveness of the Settlement was a condition of PIMCO's agreement to provide the EFIH First Lien DIP Financing. That financing was approved by order dated June 6, 2014, has not been appealed, and was fully funded on June 19, 2014—more than four months ago. In the interim, the EFIH First Lien DIP Financing proceeds have been used, among other things, to repay the EFIH First Lien Notes, fund the EFIH First Lien Settlement, pay certain transaction fees, and for working capital needs for general corporate purposes of the EFIH Debtors.

Moreover, the second factor from *Continental I* weighs in favor of dismissing this appeal as equitably moot. Appellant timely moved for a stay in both the Bankruptcy Court and in this Court, but those requests were denied. The parties to the Settlement thus moved forward, and Appellant took no action to prevent the DIP Order from entering or appealing its effectiveness (or seeking provisions in it that would provide for the relief it now requests).

The third factor, whether the relief requested would affect the rights of parties not before the court, is also satisfied because DIP funds have been used to pay settling EFIH First Lien Noteholders, including a number of tendering holders and settling parties not part of this appeal, and the provisions of the DIP Credit Agreement and DIP Order impose additional conditions and restrictions to protect the security and future use of those funds.

The relief requested by Appellant—particularly its extraordinary request that this Court require any plan of reorganization to include the first lien settlement offer and to require the EFIH Debtors to make the higher level settlement offer to all first lien noteholders—threatens the

success of the Settlement and undermines the premise of the DIP Financing, thus tilting the fourth factor in favor of equitable mootness. The entry of an unstayed order approving the Settlement and the restrictions and conditions on the use of the DIP proceeds were express conditions of the DIP Order. Accordingly, the fourth *Continental I* factor weighs in favor of dismissing this appeal.

Finally, the public policy of affording finality to bankruptcy judgments also favors application of the equitable mootness doctrine. In *Continental I*, the court explained, "Where, as here, investors and other third parties consummate a massive reorganization in reliance on an unstayed confirmation order that, explicitly and as a condition of feasibility, denied the claim for which appellate review is sought, the allowance of such appellate review would likely undermine public confidence in the finality of bankruptcy confirmation orders and make successful completion of large reorganizations like this more difficult." *Continental I*, 91 F.3d at 565. The interests are as equally compelling here, where PIMCO relied upon the Bankruptcy Court's unstayed approval and proceeded to substantially consummate the Settlement by releasing the bargained-for post-petition financing—in a total amount exceeding $2.3 billion.

Because the *Continental I* factors, and in particular the substantial consummation factor, weigh in favor of equitable mootness, the Court should dismiss this appeal as equitably moot. Appellant's inability to satisfy the requirements of a stay, and its failure to appeal the DIP Order notwithstanding its direct tie to the effectiveness of the Settlement Order, instigated a complex chain of events that this Court should decline to try to unwind or to permit by remand. The doctrine of equitable mootness exists to address these precise types of circumstances, and the Appellant's attempt to artificially limit the doctrine is unsupported by law. As a result, this appeal should be dismissed.

## II.   The Remedies Requested By the Appellant Lack Any Basis in Law

Appellant further contends that its appeal is not moot because partial remedies are available to it. But Appellant fails to specify any legal basis for these novel remedies—which it raises for the first time on appeal. Appellant's requested remedies also expressly seek an unconstitutional advisory opinion that this Court lacks the power to issue. These problems further support the dismissal of this appeal.

### A.   Appellant's Requested Relief Sets the Floor of its Recovery at the Same level as the Settlement Agreement It Declined, While Allowing it to Continue to Litigate for A Higher Recovery

Appellant's first two requested remedies, (A) that any plan of reorganization must include the first lien settlement offer and (B) that the EFIH Debtors make the higher level settlement offer to all first lien noteholders, ask that settlement offers of particular amounts be left open as part of any plan confirmation. Appellant Br. at 18-19 (urging the Court to "require that any proposed plan of reorganization for EFIH include a 26.9 cents-on-the dollar settlement offer to the holders of 10% Notes. . . valid through the voting deadline" and "require[] the Debtors to make a settlement offer to the holders of 10% Notes at the level of 63.8 cents on the dollar. . . for a thirteen-business-day period").

Appellant fails to cite any statutory basis or case law supporting these kinds of extraordinary prospective remedies or any basis upon which to require such terms when the Debtors' exclusivity period has not ended. Nor does the Appellant even attempt to explain why this request for injunctive relief, applicable to any future plan proposed by any party, meets the high threshold that ordinarily governs such requests. *See Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) (setting forth requirements that "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3)

the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.").[9]

Appellant seeks relief that would give it a "floor" of recovery on its disputed claims, notwithstanding its decision not to accept the offer made by the Debtors.  By leaving the offer open throughout the bankruptcy process, Appellant can continue to litigate the makewhole proceeding without running any risk that its recovery will be less than those creditors that agreed to settle in exchange for abandoning the right to litigate the makewhole amount.  "Providing different treatment to a creditor who agrees to settle instead of litigating is permitted by section 1123(a)(4).  What is important is that each claimant within a class have the same opportunity to receive equal treatment."  *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (D. Del. 2011) (internal citations omitted).  Appellant had that chance and declined the opportunity.  Its attempts to keep both offers open during the pendency of litigation is a fundamentally unfair attempt by one set of creditors to make themselves beneficiaries of a settlement agreement they declined to participate in, and gain leverage in the ongoing litigation against the Debtors.

---

[9] To the extent Appellant's request seeks relief in the nature of mandamus (and assuming such relief is available from this Court), it likewise has failed to clearly request this remedy, and has not come close to showing that this is the sort of "exceptional circumstance[]" in which the writ is available. *In re Baldwin*, 700 F.3d 122, 126 (3d Cir. 2012) (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)).  To obtain mandamus relief, "the petitioner must establish both that there is (1) no other adequate means to attain the relief sought, and (2) a right to the writ that is clear and indisputable." *Id.* (citations omitted).  The burden of proving the prerequisites for issuance of writ of mandamus rests with the petitioner, *see Eastwind Group, Inc. v. Nat'l Union Fire Ins. Co.*, 47 Fed. App'x 83, 85 (3d Cir. 2002), and Appellant cannot meet either requirement here because it had adequate means to attain the relief sought but declined the opportunity, and can point to no profound abuse of discretion by the Bankruptcy Court that establishes its "indisputable" right to the writ.

**B.   Appellant's Request for An Order Prohibiting Future Tender Offers is Not Ripe for Adjudication and Seeks an Impermissible Advisory Opinion**

Appellant also requests that this Court "require the bankruptcy court to enter an injunction against the Debtors proposing any additional tender offers in the chapter 11 case." Appellant Br. at 19.  As Appellant acknowledges, Debtors have not actually proposed any future tender offer.  *See id.* ("The Debtors have stated that they *may* make such tender offers again.") (emphasis added).  The statement Appellant cites in support of its argument, that EFH "reserves the right to commence a new tender offer, or to otherwise redeem or repurchase some or all of the outstanding EFIH *Second* Lien Notes, *at a later date*," presents no actual "case" or "controversy."  Appellant Br. at 19 n.3 (emphasis added).  *See* U.S.C.A. Art. 2, cl. 1; *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 307 (3d Cir. 2000) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967)) ("ripeness doctrine 'prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements....'"); *Samsung Elec. Co. Ltd. v. Ad Hoc Consortium of Floating Rate Noteholders*, Civil No. 09–0836 (RBK) (consolidated), 2010 WL 2636115, *3 (D. Del. June 29, 2010) ("A federal court cannot issue an opinion where a party merely faces the prospect that someday harm might occur.").  Moreover, it is unclear how the Appellant, who is not a Second Lien holder and does not claim to represent the interests of these creditors, has any standing to challenge such an offer if in fact it does not materialize at some point in the future.  Appellant's requested relief thus violates the "[t]he oldest and most consistent thread in the federal law of justiciability[,] that federal courts will not give advisory opinions."  13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3529.1 (3d ed. 1998).  *See In re Rickel Home Centers, Inc.*, 209 F.3d at 307 (quoting 15 James Wm. Moore *et al.*, *Moore's Federal Practice* § 101.75, at 101–152 (Matthew Bender 3d ed. 1999) ("As neither party is now seeking to invoke the court's

jurisdiction with respect to a particular dispute, a ruling on the court's jurisdiction in the future would 'constitute nothing more than an advisory opinion based on a hypothetical scenario.'").

In this case, other remedies are available to Appellant to address any future tender offers that implicate its interests, should they arise. Appellant can challenge any future tender offer on its specific terms in the Bankruptcy Court, or move for injunctive relief and/or a stay of any order approving such an offer. But seeking such relief now, based on a hypothetical future offer, seeks nothing more than an improper advisory opinion. *See Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 853 (3d Cir. 1996) (holding that a finding that a bank's lien would not be discharged by debtor's Chapter 13 case was an advisory opinion where debtor had not moved for order of lien avoidance and issue of lien's survival was not before court); *In re W.R. Grace & Co.*, 475 B.R. 34, 97-98 (D. Del. 2012) (where no actual dispute existed, bankruptcy court properly declined to rule on whether injunction permitted claimants to assert hypothetical future claims against insurers for their alleged independent tortious "insurer wrongdoing"). This Court should not prematurely wade into that dispute when it is unclear whether it will ever occur.

## CONCLUSION

For the foregoing reasons, PIMCO respectfully requests that this Court dismiss this appeal as statutorily and equitably moot, and for seeking remedies lacking basis in the law.

Dated: October 21, 2014
      Wilmington, Delaware

                    Respectfully submitted,

                    **PACIFIC INVESTMENT**
                    **MANAGEMENT COMPANY LLC**

                    By its attorneys,

                    CONNOLLY GALLAGHER LLP
                    Karen C. Bifferato (#3279)
                    1000 N. West Street, Suite 1400
                    Wilmington, DE  19801
                    Telephone:  (302) 888-6221
                    Facsimile:  (302) 757-7299
                    Email:  kbifferato@connollygallagher.com

                        -and-

                    BINGHAM MCCUTCHEN LLP
                    Jeffrey S. Sabin
                    399 Park Avenue
                    New York, New York 10022
                    Telephone:  (212) 705-7000
                    Facsimile:  (212) 506-1800

                        -and-

                    Julia Frost-Davies
                    Patrick Strawbridge
                    Christopher L. Carter
                    One Federal Street
                    Boston, MA 02110
                    Telephone:  (617)-951-8000
                    Facsimile:  (617)-951-8736

                    *Counsel for Pacific Investment Management*
                    *Company LLC*