## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.,* ) | Chapter 11 |
| *Debtors.* ) | Bankruptcy Case No. 14-10979 (CSS) |
| ) | (Jointly Administered) |
| ———————————————————— ) | |
| ) | |
| DELAWARE TRUST COMPANY ) | |
| f/k/a CSC TRUST COMPANY OF DELAWARE, ) | Adversary Proceeding |
| as INDENTURE TRUSTEE, ) | No. 14-50363 (CSS) |
| *Appellant,* ) | |
| ) | |
| v. ) | BAP 14-024 |
| ENERGY FUTURE HOLDING CORP, *et al.,* ) | C.A. No. 14-723 (RGA) |
| *Appellee.* ) | |
| ———————————————————— ) | |

## BRIEF OF APPELLEE

**KIRKLAND & ELLIS LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

### Table of Contents

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ............................................ 1

SUMMARY OF ARGUMENT .................................................................................................. 2

STATEMENT OF FACTS .......................................................................................................... 4

ARGUMENT .............................................................................................................................. 6

I.      THIS APPEAL MUST BE DISMISSED AS MOOT. ....................................................... 6

    A.   The Appeal Is Statutorily Moot Under 11 U.S.C. § 364(e). ............................................. 6

    B.   The Appeal Is Equitably Moot As Well. ........................................................................... 7

    C.   The Trustee's Alternative Remedial Proposals, Presented for the First Time on Appeal, Cannot Save the Appeal from Mootness. ........................................................................... 9

II.     THE SETTLEMENT IS FAIR AND LEGAL ................................................................. 11

    A.   The Bankruptcy Court Correctly Held That The Settlement Is Fair And Reasonable. .... 12

    B.   The Trustee's Challenge to the Tender Offers Is Baseless. ............................................. 13

    C.   The Trustee's Disparate Treatment Challenge Fails ........................................................ 15

        1.   *Section 1123 Does Not Apply to Pre-Confirmation Settlements.* ............................... 15

        2.   *As the Bankruptcy Court Held, the First Lien Settlement Is Not Impermissibly Discriminatory.* ............................................................................................................ 17

    D.   The Settlement Is Not a *Sub Rosa* Plan. ....................................................................... 19

CONCLUSION .......................................................................................................................... 20

<u>**Table of Authorities**</u>

**Cases**

*Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*,
   587 F.3d 176 (3d Cir. 2009) .................................................................................. 10

*DIRECTV Inc. v. Seijas*,
   508 F.3d 123 (3d Cir. 2007) .................................................................................. 10

*In re Adelphia Commc'ns Corp.*,
   222 F. App'x 7 (2d Cir. 2006) ................................................................................. 9

*In re AMR Corp.*,
   No. 11-15463 (Bankr. S.D.N.Y. May 23, 2013)..................................................... 16

*In re ASARCO LLC*,
   No. 05-21207, 2009 WL 8176641 (Bankr. S.D. Tex. June 5, 2009)....................... 23

*In re AWECO, Inc.*,
   725 F.2d 293 (5th Cir. 1984) ................................................................................. 19

*In re Capmark Financial Group Inc.*,
   438 B.R. 471 (Bankr. D. Del. 2010) (Sontchi, J.)................................................... 22

*In re Columbia Gas Sys., Inc.*,
   1995 WL 404892 (Bankr. D. Del. June 16, 1995)................................................. 19

*In re Cont'l Airlines*,
   91 F.3d 553 (3d Cir. 1996) (en banc) ................................................................. 8, 13

*In re Coram Healthcare Corp.*,
   315 B.R. 321 (Bankr. D. Del. 2004) ...................................................................... 14

*In re Dana Corp.*,
   412 B.R. 53 (S.D.N.Y. 2008)................................................................................. 18

*In re Decora Indus., Inc.*,
   No. 00-4459, 2002 WL 32332749 (D. Del. May 20, 2002) .................................... 22

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007) .................................................................................. 19

*In re Journal Register Co.*,
   407 B.R. 520 (Bankr. S.D.N.Y. 2009).................................................................... 18

*In re Martin*,
   91 F.3d 389 (3d Cir. 1996) .................................................................................... 13

*In re MSR Resort Golf Course, LLC*,
   No. 11-10371 (SHL) (S.D.N.Y. Feb. 26, 2013) .................................................... 11

*In re Namco Capital Grp., Inc.*,
   No. BAP.CC-10-1120-HKIMK, 2010 WL 6259977 (B.A.P. 9th Cir. Oct. 27, 2010) ......... 9, 10

*In re New Century TRS Holdings, Inc.*,
   407 B.R. 576 (D. Del. 2009)................................................................................... 18

*In re Pa. Truck Lines, Inc.*,
   150 B.R. 595 (E.D. Pa. 1992),
   *aff'd*, 8 F.3d 812 (3d Cir. 1993) ............................................................................ 13

*In re PC Liquidation Corp.*,
   No. 05-89022-288, 2008 WL 199457 (E.D.N.Y. Jan. 17, 2008)................................... 9

*In re Plassein Int'l Corp.*,
   428 B.R. 64 (D. Del. 2010)......................................................................................... 17

*In re Res. Tech. Corp.*,
   430 F.3d 884 (7th Cir. 2005) ..................................................................................... 10

*In re Standard Oil & Exploration of Del., Inc.*,
   136 B.R. 141 (Bankr. W.D. Mich. 1992)..................................................................... 17

*In re Swedeland Dev. Grp., Inc.*,
   16 F.3d 552 (3d Cir. 1994) (en banc) .......................................................................... 6

*In re Texaco Inc.*,
   81 B.R. 813 (Bankr. S.D.N.Y. 1988)......................................................................... 16

*In re Weinberg*,
   197 F. App'x 182 (3d Cir. 2006) ............................................................................... 11

*In re Zenith Elec Corp.*,
   250 B.R. 207 (D. Del. 2000)........................................................................................ 8

*Monarch Life Ins. Co. v. Ropes & Gray*,
   65 F.3d 973 (1st Cir. 1995)....................................................................................... 11

*SEC v. Am. Trailer Rentals Co.*,
   379 U.S. 594 (1965)................................................................................................. 16

*Stokes v. Gardner*,
   483 F. App'x 345 (9th Cir. 2012)................................................................................ 9

*Wilmington Firefighters Local 1590, Int'l Ass'n of Firefighters
   v. City of Wilmington, Fire Dep't*,
   824 F.2d 262 (3d Cir. 1987) ..................................................................................... 12

**Statutes**

11 U.S.C. § 363(b) ..................................................................................................... 16

11 U.S.C. § 364(e) ............................................................................................... passim

11 U.S.C. § 364(f) ..................................................................................................... 17

11 U.S.C. § 1123(a)(4)....................................................................................... 4, 18, 20

11 U.S.C. § 1129 ....................................................................................................... 19

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This is a remarkable appeal.  At the beginning of their bankruptcy cases, the EFIH Debtors repaid the EFIH First Lien Notes, which were accelerated by the bankruptcy filing, and in the process saved the estates tens of millions of dollars in interest expense.  The First Lienholders, who have now all been repaid in full, contended that they are owed a so-called "makewhole premium" in connection with that repayment.  The Debtors disagree, but reached the terms of a voluntary, prepetition settlement with certain holders of First Lien Notes that the EFIH Debtors then offered to the remaining First Lienholders by way of a tender offer.  That settlement was not forced on any holder of EFIH First Lien Notes; it was merely an offer, and any holder who found its terms insufficient preserved its right to litigate its makewhole claims.  The Bankruptcy Court ultimately approved the First Lien Settlement and the tender offer as a "reasonable exercise of the debtors' business judgment."  App. 39 (Tr. 259:23-25).  And the Debtors financed the settlement with a $5.4 billion financing (the "EFIH First Lien DIP Facility"), which also allowed Debtors to pay off non-settling creditors' notes at 100% of the principal plus accrued interest.

The First Lien Trustee now seeks to overturn all of this.  By this appeal, the First Lien Trustee challenges the Bankruptcy Court's approval of the Settlement—on behalf of First Lien Noteholders who are not parties to the settlement, whose rights were not affected by the settlement, and who have received payment in full on the principal and accrued interest of their notes.  But the ship has sailed on that challenge.  The Trustee sought a stay of the Bankruptcy Court's approval order, which this Court denied because "[t]he Trustee has not . . . adduced evidence or made arguments sufficient to justify overruling the Bankruptcy Court's finding that the settlement is non-discriminatory and 'a reasonable exercise of the debtors' business judgment," D. App. 286; the Trustee had not shown a risk of irreparable harm, *see id.*; and overturning the Bankruptcy Court's approval of the First Lien Settlement would "put[] the

financing for the settlement [*i.e.*, the EFIH First Lien DIP Facility] at risk of unraveling," *id.* at n.1.  After this Court denied that stay, the Settlement became final, and the EFIH First Lien DIP Facility closed.

Under well-settled bankruptcy principles, this appeal is now moot.  The Trustee's appeal is statutorily moot under Section 364(e) of the Bankruptcy Code because it would necessarily "affect the validity of" the EFIH First Lien DIP Facility, which was indisputably entered into in good faith.  11 U.S.C. § 364(e).  The appeal is also equitably moot for similar reasons, as the Trustee's appeal would necessarily unwind that financing and the other consummated transactions it has facilitated.  And while the Trustee has now, for the first time, proposed three novel remedies that it says avoid these mootness problems, those proposals do not save the appeal both because they are waived and because they are not lawful remedies in any event.

Even if the merits of the Trustee's appeal were properly before the Court, the Bankruptcy Court's determination that the settlement was fair and reasonable should be readily affirmed.  The Trustee claims that it is raising purely legal questions, but in fact, its arguments are just attacks on the Bankruptcy Court's reasonableness determination.  And, at any rate, none of those arguments undermines the Bankruptcy Court's judgment.  Accordingly, if the Court were for some reason to conclude that the appeal is not moot, it should still affirm the order approving the Settlement.

## SUMMARY OF ARGUMENT

1.      The Court should dismiss the Trustee's appeal.  The appeal is statutorily moot under Section 364(e) of the Bankruptcy Code because it would necessarily "affect the validity of" the EFIH First Lien DIP Facility, which was indisputably entered into in good faith.  11 U.S.C. § 364(e).  $1.831 billion of that financing was used to repay EFIH First Lien Notes under the settlement, and the financing itself was expressly conditioned on the entry of an unstayed order approving the settlement, which has now gone into effect, but which the Trustee's appeal would

necessarily unwind. The appeal is also equitably moot for similar reasons, as the Trustee's appeal would necessarily unwind the DIP financing and other consummated transactions. Contrary to the Trustee's suggestions, equitable mootness is not limited to plan confirmation and applies here.

The Trustee has now, for the first time, proposed three novel remedies that, it claims, avoid these mootness problems. But those proposals do not save the appeal both because they are waived, having never been raised before the Bankruptcy Court, and because they are not lawful remedies in any event. First, there is nothing in the law to support the Trustee's request that the Court force the Debtors to re-offer the settlement to other noteholders through the plan voting deadline. And this particular proposal does not avoid mootness concerns anyway, since the settling First Lien Noteholders exchanged their debt for a portion of the EFIH First Lien DIP Facility—which cannot be done now that the facility has closed—and this remedy would require vacating the approval order below. Second, the Trustee likewise provides no authority that would allow the Court to order the Debtors not only to re-offer the settlement but to do so at "63.8 cents on the dollar. . . for a thirteen-business-day period." Appellant's Brief [D.I. 30] ("Br."), at 19. Finally, the Trustee suggests that the Court should issue an advisory opinion on the proprietary of tender offers in bankruptcy proceedings—an opinion that is unnecessary and this Court has no jurisdiction to render. With no viable argument to preserve the appeal, the appeal must therefore be dismissed as moot.

2.      Even if the Court were to conclude that the appeal were not moot, the Bankruptcy Court's approval of the settlement should be affirmed. The Trustee claims that "this appeal does not present the usual question involved in approval of bankruptcy settlements; *i.e.*, whether the settlement was 'reasonable,'" but instead involves "strictly legal questions" about "the statutory constraints on the structure of settlements in bankruptcy." (Br. 6.) Setting aside whether this is

true—and it is not—none of the Trustee's three arguments undermines the Bankruptcy Court's judgment. *First*, the Trustee's challenge to the use of a tender offer in opening the settlement to all First Lienholders is meritless both because the Bankruptcy Code does not prohibit the use of tender offers and because the offer procedure did not conceivably affect *non-settling* Noteholders' substantive rights—they just received a settlement offer, which they refused to accept—making any alleged error harmless. *Second*, the Trustee's arguments about disparate treatment fail both because 11 U.S.C. § 1123(a)(4) does not apply to settlement approvals and because the Trustee cannot, in all events, overcome the Bankruptcy Court's determination that the settlement was not discriminatory. *Finally*, the Trustee's claim that the First Lien Settlement was, in truth, a *sub rosa* plan is inconsistent with its claim that the settlement can be separated from other rulings of the Bankruptcy Court for purposes of evading mootness.

## STATEMENT OF FACTS

The Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code on April 29, 2014, in the United States Bankruptcy Court for the District of Delaware.  App. 115.  On the petition date, the Debtors filed a Restructuring Support and Lock-up Agreement, as part of which certain holders of EFIH First Lien Notes agreed to settle their alleged makewhole claims with the Debtors.  App. 201-435, 235.  In the interest of fairness and to give as many creditors as possible the chance to participate in this settlement, the Debtors initiated a voluntary opt-in process (through a tender offer) to make the First Lien Settlement available to holders of EFIH First Lien Notes.  D. App. 1-96.  Ultimately, 42% of those holders by principal amount opted into the First Lien Settlement.  D. App. 216, at ¶ 36.  Under the terms of this First Lien Settlement, these holders agreed to exchange their First Lien Notes, and to settle their asserted makewhole claims, in exchange for new debt issued under the EFIH First Lien DIP Facility.  D. App. 103-05, at ¶ 15-16.  On the other hand, parties that chose not to enter into the First Lien Settlement retained their

4

rights to pursue a better result through litigation, which is already underway.  App. 49.

On May 15, 2014, the Debtors filed a motion seeking approval of the First Lien Settlement. D. App. 97-197.  The Trustee objected to both the Settlement's procedural and substantive terms, App. 72-109, and on June 6, 2014, the Bankruptcy Court held a full hearing to address those objections, App. 1-44.  Ultimately, the Bankruptcy Court approved both the substantive terms of this Settlement and the tender offer process by which the Debtors offered this specific Settlement to its First Lien Noteholders on a post-petition basis.  D. App. 219-224; App. 38-39 (Tr. 256:6-261:11 (approving Settlement terms and process)).  The Trustee tried and failed to obtain a stay pending appeal from the Bankruptcy Court and then from this Court.  D. App. 285-87.  In its Emergency Motion for Stay Pending Appeal, the Trustee argued, among other things, that it was likely to prevail on the merits and would be irreparably harmed without a stay pending appeal.  D. App. 235-41.  This Court rejected both arguments, concluding that (1) it was not presented with "evidence or . . . arguments sufficient to justify overruling the Bankruptcy Court's finding that the settlement is non-discriminatory and 'a reasonable exercise of the Debtors' business judgment'" and (2) there was no evidence that the First Lien Trustee would be irreparably harmed absent a stay pending appeal because the risk of equitable mootness does not constitute irreparable harm. *See* D. App. 286.  This Court also held that "granting a stay beyond the period set by the Bankruptcy Court [would] cause [the Debtors] substantial injury by putting the financing for the settlement at risk of unraveling." *Id.* at n. 1.  As a result, the Settlement and $5.4 billion EFIH First Lien DIP Facility have both been fully consummated.  App. 354-82, 360-61 (setting the closing date at five days after bankruptcy court approval).  Approximately $1.831 billion of that financing was issued in exchange for EFIH First Lien Notes under the settlement, and the remaining principal and accrued-but-unpaid interest due and owing under the First Lien Notes has

been paid in full.  D. App. 281, at ¶ 4.

## ARGUMENT

### I.       THIS APPEAL MUST BE DISMISSED AS MOOT.

Now that the First Lien Settlement has been approved and the EFIH First Lien DIP Facility has been consummated, the Trustee's appeal must be dismissed both as statutorily moot under 11 U.S.C. § 364(e) and as equitably moot.  The Trustee's three proposed remedies do not save its appeal either:  the Trustee failed to ask for any of these remedies in the Bankruptcy Court, and thus waived them, and none of the remedies find support in the law.

#### A.       The Appeal Is Statutorily Moot Under 11 U.S.C. § 364(e).

The Trustee's appeal is statutorily moot because the challenged order approving the First Lien Settlement is an essential component of the EFIH First Lien DIP Facility, which indisputably constitutes good-faith financing that is protected from being overturned on appeal by 11 U.S.C. § 364(e).  That statute specifies that an appeal cannot "affect the validity of any debt" issued "to an entity that extended . . . credit in good faith, whether or not such entity knew of the pendency of the appeal, unless [the] authorization and the incurring of such debt . . . were stayed pending appeal."  *Id*.  Courts thus commonly hold that appeals of financing orders are moot where section 364(e) precludes any effective relief.  *See, e.g.*, *In re Swedeland Dev. Grp., Inc.,* 16 F.3d 552, 559-63 (3d Cir. 1994) (en banc) (holding that appeal was moot re: funds that had been distributed under financing order, but not moot with respect to undistributed funds).

The Trustee's appeal runs afoul of § 364(e).  The order approving the EFIH First Lien DIP Facility explicitly provided for the issuance of debt to satisfy the Debtors' obligations under the First Lien Settlement, and the closing and funding of that facility was expressly conditioned on the entry and effectiveness of an unstayed order approving the Settlement.  App. 360-361, 380, 382. Unwinding the First Lien Settlement—if doing so were possible, and it is not—would call the

validity of the new debt issued to settling parties into serious question. The settling parties cannot be forced to give the Debtors cash to keep their loans under the EFIH First Lien DIP Facility outstanding, and the First Lien DIP Facility should not be unwound to address the denial of this Settlement. As a result, Section 364(e) moots this appeal.

The Trustee argues that § 364(e) does not apply because "[t]he DIP Financing and the First Lien Settlement are authorized by separate orders" and because its appeal supposedly addresses only "the manner in which the Debtor used [its] DIP financing," not the validity of that financing itself. (Br. 18.) But these arguments ignore that the EFIH First Lien DIP Facility was expressly contingent on the entry of any unstayed order approving the First Lien Settlement, and that unwinding the settlement will necessarily unwind over $1.8 billion of the EFIH First Lien DIP Facility. App. 360-361, 380, 382; D. App. 281, at ¶ 4. Any appeal of the order approving the settlement thus undermines the order authorizing the DIP financing and calls into question "the validity of. . . debt" protected by § 364(e). The Trustee's appeal thus cannot be cast as affecting only "the manner in which the Debtor used its DIP financing." (Br. 18.) Section 364(e) provides that an appeal "does not affect the validity of any debt" it covers, and the Trustee's efforts would do just that—both directly and indirectly.

### B.      The Appeal Is Equitably Moot As Well.

Even if § 364(e) did not moot the Trustee's appeal, the appeal would still be equitably moot. According to the "widely recognized and accepted doctrine" of equitable mootness, "an appeal should dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Cont'l Airlines*, 91 F.3d 553, 559 (3d Cir. 1996) (en banc) (quotation and alterations omitted). Courts regularly dismiss appeals where, as here, it would be difficult or impossible to unwind the underlying transaction(s). *See, e.g.*, *id.* at 558–59; *In re Zenith Elecs. Corp.*, 250 B.R. 207, 218 (D. Del. 2000), *aff'd sub. nom. Nordhoff*

7

*Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180 (3d Cir. 2001).

The Court must consider several factors in applying the equitable mootness doctrine: "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." *In re Cont'l Airlines*, 91 F.3d at 560.  And while the first and fifth factors are framed in terms of plan confirmation, equitable mootness is not limited to that context. *See, e.g., Jevic Holding Corp.*, Nos. 13-104, 13-105, 2014 WL 268613, at *4 (D. Del. Jan. 24, 2014) ("The court finds that the settlement has been substantially consummated as all the funds have been distributed.  Should the court grant the appeal, the settlement will be irreversibly 'scrambled' . . . ."); *In re PC Liquidation Corp.*, No. 05-89022-288, 2008 WL 199457, at *5 (E.D.N.Y. Jan. 17, 2008) (finding the appeal of an approved settlement equitably moot and explaining that "equitable mootness is not limited to appeals of orders confirming reorganization plans"); *see also In re Adelphia Commc'ns Corp.*, 222 F. App'x 7, 9 (2d Cir. 2006); *Stokes v. Gardner*, 483 F. App'x 345 (9th Cir. 2012); *In re Namco Capital Grp., Inc.*, No. BAP.CC-10-1120-HKIMK, 2010 WL 6259977, at *8 (B.A.P. 9th Cir. Oct. 27, 2010).  That is because the same equitable considerations that caution against unwinding consummated plans apply with equal force to other intermediate transactions.

This is a textbook case for equitable mootness.  Both the First Lien Settlement and the EFIH First Lien DIP Facility have been consummated; the Trustee failed to obtain a stay of the approval of the First Lien Settlement (and never even sought one for the EFIH First Lien DIP Facility); unwinding those transactions would adversely affect the rights of parties not before the Court; and the Trustee's appeal, if successful, would set back the efforts of the Debtors and the majority of

8

their creditors to achieve a viable plan of reorganization; and the policy of affording finality to bankruptcy judgments favors not disturbing the Bankruptcy Court's decision. The appeal should therefore be dismissed as equitably moot.

The Trustee argues that equitable mootness applies only to final plan confirmation, (*see* Br. 18), but as noted above, the doctrine is not so limited. The only case the Trustee cites does not hold, as the Trustee suggests, that "[s]ettlements are not subject to this rule." *Id.* (citing *In re Res. Tech. Corp.*, 430 F.3d 884, 886–87 (7th Cir. 2005)). Rather, the Seventh Circuit merely held that the case was not equitably moot because the standard for mootness was not met. *See* 430 F.3d at 887 ("Appellees do not contend . . . that anyone who has relied on the settlement would be left in the lurch; the lenders could be ordered to compensate the firm that completed the system and collected the gas. So we must resolve the merits."). In fact, that court's analysis only underscores that equitable mootness can apply to a settlement in a case like this one.

### C.     The Trustee's Alternative Remedial Proposals, Presented for the First Time on Appeal, Cannot Save the Appeal from Mootness.

Realizing that its appeal is moot, the Trustee attempts to end-run § 364(e) and equitable mootness by proposing three remedies that, it says, allow the Court to reach the merits without unwinding any of the consummated transactions. (Br. 17–19.) But none of these novel remedial proposals rescue the Trustee's appeal.

***First***, these remedies (assuming they were available) are waived because the Trustee never proposed them to the Bankruptcy Court. It is well settled that arguments must be made below if they are to be raised on appeal. *See, e.g., DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal."). And this preservation requirement applies specifically to the forms of relief requested, *see, e.g., Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd. Of Educ.*, 587 F.3d 176,

186 (3d Cir. 2009) ("Because they never litigated their right to that relief before the District Court, they have waived their right to do so before us."); *In re MSR Resort Golf Course, LLC*, No. 11-10371, 2013 WL 766166, at *1 (S.D.N.Y. Feb. 26, 2013) (dismissing appeal where appellant "did not present [the Bankruptcy Court] with the [relief] that it seeks from this Court."), and to issues that could have been raised in the Bankruptcy Court before an appeal, *see, e.g.*, *In re Weinberg*, 197 F. App'x 182, 189 (3d Cir. 2006) ("[T]he District Court did not abuse its discretion in holding that Schwartz waived her equitable-exceptions argument by failing to raise it before the Bankruptcy Court."); *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 981 n.10 (1st Cir. 1995) ("Even if this 'severability' contention had merit, the district court properly noted that it had been waived by Monarch Life's failure to raise it in the bankruptcy court contempt proceeding."). The Court thus should not consider these proposals.

*Second*, even if these "remedies" had not been waived, they have no basis in the law. The Trustee offers no authority to support the notion that, in reviewing the approval of a settlement between Debtors and various third parties, this Court can somehow order the Debtors to re-offer that settlement to non-settling parties. *See In re MSR Resort Golf Course LLC*, No. 13 CIV. 2448 KPF, 2014WL67364, at *11 (S.D.N.Y. Jan. 7, 2014) ("The Appellant cannot simply demand that the Purchaser make another, separate payment. For the Appellant to have received $58 million, the Purchaser would have had to agree to pay that $58 million in the first place.") Not only that, but the Trustee asks the Court to order the Debtors both to hold that offer open "through the voting deadline" and to *increase* the value of the offer to certain noteholders. (Br. 19.) Even if this Court had such extraordinary authority—and the Trustee cites no cases to suggest that it does—this remedy does not avoid the mootness problem. As the Trustee acknowledges, its forced-offer proposals will still require "partially vacat[ing] the ruling below." *Id.* at 18; *see also id.* at 19

("Remedying the disparity would be accomplished by vacating in part. . . ."). Because the consummation of the EFIH First Lien DIP Facility was conditioned on the entry of an unstayed order approving the settlement, even a partial vacatur of that order would pose the same threat of unwinding the consummated transactions.[1]

The Trustee's additional request that this Court "require the bankruptcy court to enter an injunction against the Debtors proposing any *additional* tender offers in the chapter 11 case," (Br. 19) (emphasis added), is simply a request for "an advisory opinion prohibited under Article III," *Wilmington Firefighters Local 1590, Int'l Ass'n of Firefighters v. City of Wilmington, Fire Dep't*, 824 F.2d 262, 266 (3d Cir. 1987). The Trustee has not identified any concrete dispute regarding the future use of tender offers and cannot ask this Court simply to opine on whether they would be appropriate under some hypothetical set of circumstances in the future. Those potential tender offers are not before the Court now—especially since the Debtors cannot make another tender offer to the First Lienholders, who have already been repaid.[2]

Because the Trustee's alternative "remedies" are waived and, at any rate, not authorized remedies, they do not allow the Trustee to end run the mootness of this appeal.

## II.   THE SETTLEMENT IS FAIR AND LEGAL.

Should the Court determine that the appeal is not moot, the Bankruptcy Court's order approving the First Lien Settlement as fair and reasonable should be affirmed.

---

[1] The Trustee claims that the availability of partial relief avoids equitable mootness. (Br. 18.) But partial relief is not available because the Settlement is consummated and the DIP Facility funding the settlement has closed. Even if partial relief were available, that relief still must have been preserved for appeal and must also be legally permissible. It is not here.

[2] In earlier phases of this appeal, the Trustee argued that the tender-offer issue was "capable of repetition, yet evading review," apparently believing that the doctrine might provide an exception to equitable mootness. It does not. As the Third Circuit has explained, "equitable mootness" is a completely separate doctrine from constitutional mootness. *See In re Cont'l Airlines*, 91 F.3d at 559. The "capable of repetition, yet evading review" doctrine applies only to the constitutional mootness, focusing on whether there is a live Article III controversy, not whether it would be equitable to unwind settled expectations.

### A.  The Bankruptcy Court Correctly Held That The Settlement Is Fair And Reasonable.

The Trustee does nothing to undermine the Bankruptcy Court's determination, under Bankruptcy Rule 9019, that the settlement was fair and reasonable.  The Bankruptcy Court appropriately assessed four factors in determining whether to approve the First Lien Settlement: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation, and the expense, inconvenience, and delay accompanying it; and (4) the paramount interest of the creditors. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).  The purpose of this standard is to ensure that "settlements [are] moved through quickly to be sure that creditors can resolve claims without waiting for a full reorganization plan." *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 599 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993).  It is well settled that a settlement or compromise need only be above "the lowest point in the range of reasonableness," and "the court should defer to a [debtor]'s judgment so long as there is a legitimate business justification for his action." *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) (internal quotation omitted).

The Bankruptcy Court had no trouble concluding that the Settlement satisfied this standard. As the Bankruptcy Court explained, "I haven't heard anything about discrimination or about any kind of unsupported activity that would make me look at this settlement as anything other than under the normal reasonable exercise of business judgment . . . The record clearly supports that this was a reasonable exercise of the debtors' business judgment." App. 39 (Tr. 259:17-25).  In other words, approval of the Settlement was not a close call.  The Settlement allows the Debtors to resolve a significant portion of disputed makewhole claims related to the repayment of the First Lien Notes that would otherwise serve as a distraction and ongoing contingency in these chapter 11 cases.

Indeed, it is telling that the First Lien Trustee does not even argue that the Settlement fails to satisfy the applicable standard. (*See* Br. 6 ("This appeal does not present the usual question . . . whether the settlement was 'reasonable' from the debtor's perspective.").)  As the Bankruptcy Court recognized, there is no colorable argument that the Settlement was not heavily negotiated at arms' length. *See* App. 38 (Tr. 258:2-4 ("[T]o say that there wasn't an opportunity to engage in settlement[,] there wasn't [a] back [and] forth I think is unfair and I don't think the facts justify that.")).  Nor is there a colorable argument that the Settlement was not a "normal reasonable exercise of business judgment." App. 38 (Tr. 259:20).

Lacking any basis for undermining the Bankruptcy Court's reasonableness finding, the Trustee raises what it characterizes as three issues concerning "the statutory constraints on the structure of settlements in bankruptcy." (Br. 6.)  None have any merit.

### B.     The Trustee's Challenge to the Tender Offers Is Baseless.

The Trustee first argues that the Debtors' use of a tender offer was impermissible under the Bankruptcy Code, but this argument should be rejected for three reasons.  *First*, notwithstanding the Trustee's instance to the contrary, this is simply an attack on the Bankruptcy Court's determination that the First Lien Settlement was reasonable.  The Bankruptcy Court squarely addressed this issue and concluded that, "in the specific and unique facts and circumstances of this first lien settlement [the Court was] not troubled by [the exchange offer mechanism] and [was] not going to deny approval of the settlement based on that." App. 39 (Tr. 261:1-7).  The Court reached this conclusion because the settlement and exchange offer that was up for approval "was on the table as of the petition date.  It was all there for sophisticated parties to figure out.  And by the motions and lawsuits and everything I've seen... people got their head around it real fast." App. 39 (Tr. 260:11-16).  The Trustee suggests a parade of horribles that could result from the use of tender offers in bankruptcy, (Br. 12–14), but that is precisely why the Bankruptcy Court should

13

have the discretion to consider the reasonableness of the settlement based on the facts and circumstances presented by each potential settlement; it is not a reason to forbid tender offers categorically.[3]

*Second*, the Trustee offers no authority establishing that tender offers are impermissible in a Chapter 11 reorganization. Rather, the argument section of the Trustee's brief opens with a history lesson about the transition from equity receivership to Chapter 11. *See id.* at 7–9. But that only shows that the Trustee has no legal rule to stand on.[4] Section 363(b) of the Bankruptcy Code provides that a debtor may only use property outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). But the Debtors only made a settlement *offer* without Court approval, and the Debtors clearly disclosed in the offer materials that Court approval was required to effectuate such a settlement. *See* D. App. 2 (paragraph in bold capital letters. This is perfectly ordinary, and happens all the time in the bankruptcy context. Making a settlement offer does not require court approval—only the consummation of a settlement does. *See In re Texaco Inc.*, 81 B.R. 813, 816-18 (Bankr. S.D.N.Y. 1988) (holding that entry into a postpetition agreement subject to court approval does not require preapproval under section 363(b) of the Bankruptcy Code). The Debtors made the offer in the form of a tender because it happened to involve the exchange of securities and because they wanted to offer a settlement to all First Lien Noteholders. Securities offerings outside of a chapter 11 plan solicitation have been conducted in bankruptcies. *See, e.g., In re AMR Corp.*, No. 11-15463, Dkt. No. 8268 (Bankr. S.D.N.Y. May 23, 2013) (undertaking an

---

[3] The Trustee claims that, by reserving the possibility of revisiting the tender-offer issue, the Bankruptcy Court "clearly demonstrate[d] error." (Br. 10.) Not so. If anything, the Bankruptcy Court's statements merely reflect the reality that the appropriateness of tender offers could depend on the circumstances, such that the Court's approval of their use in this instance should not be taken as an approval of their use in all future instances

[4] The Trustee's reliance on *SEC v. Am. Trailer Rentals Co.*, 379 U.S. 594 (1965), is misplaced. As the Trustee concedes, (*see* Br. 9,) that case involved an attempt to solicit votes for a plan, which ran afoul of provisions in the Bankruptcy Code requiring pre-approval for such solicitations. Those provisions do not apply here.

offer to purchase in bankruptcy); *In re Standard Oil & Exploration of Del., Inc.*, 136 B.R. 141 (Bankr. W.D. Mich. 1992) (undertaking an offer to sell DIP notes in bankruptcy); *see also* 11 U.S.C. § 364(f) (contemplating offerings to participate in a debtor-in-possession financing).

***Finally***, even if the Trustee were somehow right that tender offers are improper in Chapter 11 reorganization, that still does not justify upsetting the First Lien Settlement on appeal. Bankruptcy rulings are subject to the same harmless error analysis that applies under the Civil Rules. *See* Fed. R. Bankr. P. 9005; *see also In re Plassein Int'l Corp.*, 428 B.R. 64, 68 (D. Del. 2010). The Trustee, who represents the interests of parties who ***rejected*** the tender offer, and whose right to litigate their makewhole claims was unaffected by the First Lien Settlement, cannot establish that the use of a tender offer "affect[ed] [their] substantial rights," Fed. R. Bankr. P. 9005, even if they could show that it was improper. In fact, the only potential harm that the Trustee identifies is that "[p]ermitting tender offers in chapter 11 will have major adverse consequences on the underlying structure of chapter 11 cases." (Br. 12.) But the Trustee does not explain how this might be true in ***this*** case with regard to ***this*** tender offer based on the record before the Court.

### C.     The Trustee's Disparate Treatment Challenge Fails.

The Trustee also cannot overturn the First Lien Settlement based on its argument that the First Lien Settlement unfairly discriminated among First Lien Noteholders. That argument misstates the law—there is no requirement that the Debtors make the same settlement offer to all similarly situated parties—and is unsupported by the factual record.

### 1.     *Section 1123 Does Not Apply to Pre-Confirmation Settlements.*

As an initial matter, instead of focusing on the appropriate legal standard—Bankruptcy Rule 9019—the First Lien Trustee claims that the settlement treats claims unequally in violation of section 1123(a)(4) of the Bankruptcy Code. Section 1123(a)(4), on its face, provides that "a *plan*

shall . . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4) (emphasis added). This statute, by its clear text, governs "a plan" of reorganization, not a Bankruptcy Rule 9019 settlement.

This interpretation is reinforced by repeated decisions making plain that section 1123(a)(4) does not apply in this context. *See In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008) ("[The language of 1123] is not addressed to the steps in a reorganization that occur before a plan is confirmed, such as the Settlement Order in this case."); *see also In re Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009) ("[T]he question under § 1123(a)(4) is whether the payment that creates the difference is provided 'under the Plan.'"). And that makes perfect sense: "If [the debtor] and a [creditor] ultimately do not settle a claim, the [creditor] retains its rights to seek the full amount of its filed proof of claim, which in each case is higher than any settlement offer. As to the treatment of claims within the same class, that is a confirmation issue." *In re Columbia Gas Sys., Inc.*, Nos. 91-803 & 91-804, 1995 WL 404892, at *2 (Bankr. D. Del. June 16, 1995). The same is true here—the First Lien Trustee's attempt to import section 1123(a)(4) standards to a Bankruptcy Rule 9019 settlement simply is not appropriate, and the non-settling noteholders retain their rights to seek the full amount of any so-called makewhole claim.

The Trustee relies on two out-of-circuit cases—*In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007), and *In re AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984)—holding that a settlement cannot violate the absolute priority rule of 11 U.S.C. § 1129, and argues that "the logic of those decisions applies just the same to the equal treatment rule." (Br. 14.) But that is both wrong and irrelevant. It is wrong because allowing settlements to end-run the absolute priority rule presents a more acute risk of misconduct, and at any rate, it is irrelevant because both the Second Circuit and

the Fifth Circuit recognized that what was important was not allowing settlements to deplete the funds available to satisfy the claims of senior creditors. *See Iridium*, 487 F.3d at 464; *AWECO*, 725 F.2d at 298. Here, the Trustee cannot credibly claim that the Settlement compromised the ability of non-settling Noteholders to collect their claims in full. In fact, the settlement facilitated the EFIH First Lien DIP Facility, which allowed Debtors to pay them back *100%* on the principal and accrued interests of their notes. And non-settling creditors will be paid their makewhole claims in full should they prevail. The concerns at issue in *Iridium* and *AWECO* are thus absent here.

These cases are also, in all events, not binding precedent here. Indeed, this Court has previously declined to apply confirmation requirements to settlement approvals, even where settlements were alleged to violate the absolute priority rule that *Iridium* and *AWECO* squarely address. *See In re Jevic Holding Corp.*, No. 08-11006 (BLS), 2014 WL 268613, at *3 (D. Del. Jan. 24, 2014) ("As discussed by the bankruptcy court, the settlement does not follow the absolute priority rule. However, this is not a bar to the approval of the settlement as it is not a reorganization plan.").

> 2. *As the Bankruptcy Court Held, the First Lien Settlement Is Not Impermissibly Discriminatory.*

Even if the Debtors were required to provide the same settlement terms to all similarly situated parties, the order approving the First Lien Settlement should still be affirmed because it does not unfairly discriminate among First Lien Noteholders. As the Trustee acknowledges, the Bankruptcy Court held that the Settlement was not unfairly discriminatory because every First Lien Noteholder was given the same offer—105% of principal and 101% of accrued interest—and also because, to the extent that offer failed to account for variations in each noteholder's claim, there was a reasonable basis for making one uniform offer. (*See* Br. 15.)

As an initial matter, the First Lien Settlement does provide "the same treatment for each claim or interest in a particular class," § 1123(a)(4), because the offer of 105% plus 101% applied to everyone. As the Bankruptcy Court explained in ruling on the First Lien Trustee's objection, "there aren't any incidents of discriminatory treatment here and it certainly isn't unfair discriminatory treatment." App. 37 (Tr. 256:22-24.) Nor was the settlement discriminatory because different creditors might have different claims. "One side has ten percent interest, the other has six and seven-eighths, but they're both getting paid 101 cents on accrued interest." App. 37 (Tr. 256:19-21.) The non-settling First Lienholders had the chance to take this deal and declined the opportunity.

Moreover, the Trustee offers no authority (because there is none) for the proposition that a settlement must provide "the same treatment for each claim or interest in a particular class" means that a debtor must offer the same percentage of each creditor's asserted claim. Parties settling cases sometimes value those settlements based on the size of the asserted claims, but they often disagree as to what that value is. Some holders of 10% First Lien Notes, for instance, might think they have a higher-value claim than holders of 6 7/8% First Lien Notes, but from the Debtors' perspective, both groups' claims have a value of $0. There are thus many other considerations that often come into play when valuing a settlement—*e.g.*, expected litigation costs, or in the case of bankruptcy, buying peace and moving closer to a viable plan.[5]

Indeed, there were important reasons for the Debtors to offer a single, uniform settlement to their 6 7/8% and 10% noteholders: the relatively small proportion of the 6 7/8% notes and the benefit of simplicity in the Debtors' offer. Making the same 21% settlement offer to the 6 7/8%

---

[5] It is also telling that the party challenging the treatment of different groups of settling creditors represents the interests of *non-settling* creditors. As with the tender-offer challenge, *see* pp. 13-15 *supra*, the Court would also be justified in affirming the Bankruptcy Court's approval order on the ground that the error alleged by the Trustee is harmless under Bankruptcy Rule 9005 because it does not affect the "substantial rights" of the parties that the Trustee purports to represent.

notes as the 10% notes would have made little sense.  As the Debtors explained in the Bankruptcy Court, their cost of funding—in transaction costs associated with the financing—would have actually exceeded the 21% settlement offer to the 6 7/8% Notes.  *See* App. 61 (quoting D. Ying Dep. Tr. 125:21-129:20).  "[T]he 6 7/8ths investor[s] would [have found] that offer to be totally unsatisfactory given the fact that [the Debtors are] asking them to both provide financing and to waive their … make-whole argument."  App. 14 (Tr. 160:18-22).  The Debtors' decision to move forward with a more plausible settlement offer is thus a valid exercise of their business judgment; the Settlement should thus be affirmed.

### D.      The Settlement Is Not a *Sub Rosa* Plan.

Finally, the Trustee argues that the First Lien Settlement is not a settlement at all, but rather a plan in disguise. (*See* Br. 16–17.)  The Trustee relies on the Bankruptcy Court's decision in *In re Capmark Financial Group Inc.*, 438 B.R. 471 (Bankr. D. Del. 2010) (Sontchi, J.).  That case recognized the possibility that a settlement could be used to effectuate a plan in contravention of the Bankruptcy Code if the settlement's terms "either (i) dispose of all claims against the estate or (ii) restrict creditors' rights to vote."  *Id.* at 513; *see also In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *8 (D. Del. May 20, 2002).  But there is no colorable claim that the First Lien Settlement did either, as the Trustee seems to recognize.  Instead, the Trustee argues that the First Lien Settlement is an inextricable piece of a proposed Global Settlement, which in turn constitutes a so-called *sub rosa* plan. (*See* Br. 16–17.)  The Court can readily dismiss that argument.  To start, the Trustee cannot have it both ways, arguing that the First Lien Settlement is separate and independent from the EFIH First Lien DIP Facility to avoid mootness, (*see* Br. 18 ("The DIP Financing and the First Lien Settlement are authorized by separate orders of the bankruptcy court.")), and yet at the same time arguing that the Settlment should be invalidated as an inextricable piece of a *sub rosa* plan consisting of that same DIP financing and the numerous

other pieces of the proposed Global Settlement.

But even setting that aside, the Trustee's argument is based on assertions about what the Global Settlement "would have" done, (Br. 17), had it been effectuated. What the Trustee fails to tell the Court, however, is that the Global Settlement has been withdrawn and is no longer before the bankruptcy court. D. App. 288-91. The pieces that the Trustee complains of—*e.g.*, the plan to "replace the EFIH second lien notes with 'mand[a]torily convertible' DIP financing," (Br. 17)— are not going to happen. Moreover, even if the Debtors were still pursing the Global Settlement— which again, they are not—the simple fact that the First Lien Settlement is part of a "global settlement" does not render it a *sub rosa* plan. Complex chapter 11 cases like this one frequently advance in incremental steps toward confirmation. *See, e.g.*, *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *12, *48-50 (Bankr. S.D. Tex. June 5, 2009) (holding that a settlement was "an important step in facilitating the Debtors' emergence from bankruptcy" and was not a *sub rosa* plan). Short of satisfying the standard for a *sub rosa* plan, the fact that the First Lien Settlement is critical to this chapter 11 case actually supports the reasons why it should be approved.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court dismiss this appeal or, in the alternative, affirm the ruling below.

Dated:  October 21, 2014
     Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession